**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DAVID DAY individually
and on behalf of a class of similarly
situated persons,

    Plaintiffs,

v.           CASE NO:  19-cv-01522-VMC-TGW
            **<u>CLASS ACTION</u>**

SARASOTA DOCTORS HOSPITAL, INC.
d/b/a DOCTORS HOSPITAL OF SARASOTA

    Defendant.

_____/

**SECOND AMENDED COMPLAINT**
**<u>AND DEMAND FOR JURY TRIAL</u>**

 Plaintiff DAVID DAY, individually and on behalf of all others similarly situated

persons, hereby file suit against Defendant, SARASOTA DOCTORS HOSPITAL, INC.

d/b/a DOCTORS HOSPITAL OF SARASOTA and alleges:

**<u>INTRODUCTION</u>**

1.  This is an action for damages and declaratory relief brought by Plaintiff, DAVID

DAY, individually and on behalf of all other similarly situated individual consumers (or

their guardians or representatives) against the Defendant, SARASOTA DOCTORS

HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA (hereinafter referred to

as "Defendant"), for breach of contract, breach of the implied covenant of good faith and

fair dealing, unjust enrichment, and violation of the State of Florida Deceptive and Unfair

Trade Practices Act (hereinafter referred to as "FDUTPA"), which prohibits

unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of

any trade or commerce.

2.      Plaintiff, DAVID DAY, is a natural person residing in Sarasota, Sarasota County Florida (hereafter "Plaintiff"). The Plaintiff is a "consumer" as defined by Florida Statutes §501.203(7).

3.      Defendant, SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA (hereafter "Defendant") is a Profit Corporation registered in the State of Florida with its principal place of business located at One Park Plaza, Nashville, TN 37202, and, as detailed below, engages in "trade or commerce" as defined by Florida Statutes §501.203(8).

4.      At all times material to the allegations of this complaint, Defendant was engaging in trade or commerce when offering and providing healthcare services.

5.      Upon information and belief, Defendant's practice of charging exorbitant and unreasonable rates for Personal Injury Protection (herein after as "PIP") covered healthcare services following motor vehicle accidents constitutes unfair, deceptive, or unconscionable trade practices in violation of FDUTPA as provided by Florida Statute §501.201-.203.

6.      Personal Injury Protection coverage is required of all drivers in Florida.  By statute, hospitals treating patients covered by PIP may charge the insurer and the injured party only a "reasonable amount" for services and supplies rendered. § 627.736(5)(a), Fla. Stat. The charge for such services and supplies "may not exceed the amount the person or institution customarily charges for like services or supplies," and the "reasonable amount" for such services and supplies is directly related to the "usual and customary charges and payments accepted by the provider" for such services and supplies, as well as "reimbursement levels in the community" and "federal and state medical fee schedules." *Id.*

7.      Defendant, SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA, sees thousands of patients each year for injuries related to automobile accidents that involve PIP insurance.

8.      In direct contravention of the Florida Motor Vehicle No-Fault Law ("PIP Statute"), Defendant SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA charges well in excess of the "reasonable amount" for healthcare services provided to PIP-covered patients.

9.      Upon information and belief, when SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA's emergency department sets the amount of fees it will charge for healthcare services that will be provided to PIP insured patients, it fails to and does not take into account, factor in, or consider the rates charged by other similarly situated hospitals in Sarasota County for similar services, in violation of the Florida PIP Statute.

10.     Upon information and belief, SARASOTA DOCTORS HOSPITAL, INC., D/B/A DOCTORS HOSPITAL OF SARASOTA fails to and does not take into account or consider the reimbursement rates for various Federal and State Medical Fee Schedules (i.e. Medicare) when setting the amount of fees it charges for healthcare services provided to PIP insured patients, in violation of the Florida PIP Statute.

11.     Upon information and belief, SARASOTA DOCTORS HOSPITAL, INC. D/B/A DOCTORS HOSPITAL OF SARASOTA fails to and does not take into account or consider the amount it charges and receives from commercial insurance or other insurance payors for similar services when setting the amount and fees it charges for services provided to PIP insured patients, in violation of the Florida PIP Statute.

12.     The exorbitant and unreasonable charges harm Plaintiffs because PIP only covers 80% of the emergency medical care received, up to $10,000, § 627.736(1)(a)(3), Fla. Stat., and the exorbitant and unreasonable charges leave Plaintiffs responsible for part of Defendant's inflated bills. In addition, the exorbitant and unreasonable charges prematurely exhaust the PIP coverage available to Plaintiffs, resulting in Plaintiffs having to pay out-of-pocket for additional medical services that would otherwise have been covered under PIP.

13.     In addition, Defendant provided statements to Plaintiffs with no indication of treatment or procedures that were performed, which reflected an inflated rate for healthcare services (see Exhibit "A" attached).

14.     Plaintiff brings this class action on behalf of himself and all other similarly-situated individuals (or their guardians or representatives) who received bills for PIP-covered emergency healthcare services at SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA who:

      a.   have a third-party liability claim related to the auto accident; and

      b.   (a) were billed by the facility for any portion of the charges for such services; and/or (b) had their $10,000 of PIP coverage prematurely exhausted by the facility's charges for such services, and, as a result, were billed for additional healthcare services rendered by the facility and/or third-party providers that would otherwise have been covered under PIP.

## JURISDICTION AND VENUE

15.      This is a class action for damages for statutory damages and in an exclusive amount which in no event is less than $ 1,000,000.00, exclusive of interest, costs and compensated damages within.

16.      Plaintiff, David Day, is a citizen and resident of Florida, over the age of eighteen years, and otherwise *sui juris*.

17.      Defendant, SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA, is a Florida Profit Corporation whose place of business is 5731 Bee Ridge Road, Sarasota FL, 34233. It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and it committed the tortious acts alleged herein in the state of Florida.

18.      Venue is proper in this forum because at all relevant times, Defendant conducted business in the Sarasota County, Florida, a substantial portion of the practices complained of occurred in the Sarasota, County, Florida, and because Defendant has received substantial compensation as a result of doing business in Sarasota County, Florida. Moreover, at all times material to the allegations contained herein, Defendant personally or through its agent:

    a.  operated, conducted, engaged in, and carried on a business venture in Sarasota County, Florida or had an office or agency in Sarasota County, Florida; and/or

    b.  engaged in substantial activity within this state and district.

19.      All conditions precedent to this action have occurred, been performed, or have been waived.

20.     Plaintiffs have extended attorney's fees and costs in having to file this Second Amended Complaint.

## FACTUAL BACKGROUND

### A.    The Florida PIP Statute: Protection Against Unreasonable Prices for Medical Services

21.     The Florida Motor Vehicle No-Fault Law requires all residents of Florida who own a motor vehicle to purchase PIP in the amount of $10,000 per person. § 627.736(1), Fla. Stat.  PIP covers loss resulting from bodily injury, sickness, or disease arising out of the ownership, maintenance, or use of a motor vehicle if, *inter alia*, a physician, dentist, physician assistant, or advanced registered nurse practitioner has determined that the injured person had an emergency medical condition. § 627.736(1)(a)(3), Fla. Stat.

22.     Under section 627.736(5)(a) of the PIP Statute, a physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by PIP may charge the insurer and the injured party "only a reasonable amount pursuant to this section for the services and supplies rendered."

23.     Further, charges "may not exceed the amount the person or institution customarily charges for like services or supplies."  §627.736(5)(a), Fla. Stat.

24.     The PIP Statute explicitly defines the methodology for determining whether a charge for services or treatment is "reasonable":

> [C]onsideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, reimbursement levels in the community and various federal and state medical fee schedules applicable to motor vehicle and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply. *Id.*

25.     PIP covers only 80% of the charges incurred as a result of emergency medical care received, up to $10,000, § 627.736(1)(a)(3), Fla. Stat., thus leaving PIP-covered patients responsible for part of these charges.  Once the $10,000 of PIP coverage is exhausted, PIP-covered patients without another form of applicable insurance are responsible for 100% of any additional charges incurred.

26.     An insured is not required to pay a claim or charge: (a) for services or treatment that were not lawful at the time rendered; or (b) to any person who knowingly submits a false or misleading statement relating to the claim or charges. Fla. Stat. § 627.736(5)(b)(1)(b)-(c). In the context of the No-Fault Law, "lawful or lawfully" means "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." Fla. Stat. §627.732(11).

**B.     Sarasota Doctor's Hospital's Violation of PIP**

27.     When emergency care patients arrive at the emergency department of SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA, the patients are required to sign contracts of adhesion governing the conditions of admission and treatment. The "Conditions of Admission and Consent for Outpatient Care" form (herein referred to as "Conditions of Admission" ) is hereto attached as Exhibit "B."

28.     Upon information and belief, emergency care patients are required to sign the same or substantially similar contracts as those used at SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA. The contracts purport to require payments at the rates stated in the hospital's "Charge Master" price list.

29.    The "Charge Master" is held out to be the "detailed price list" for procedures at SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA. By incorporating the "Charge Master" into the "Conditions of Admission," Sarasota Doctors Hospital, Inc. d/b/a Doctors Hospital of Sarasota represents to the public that the rates contained in the "Charge Master" are in full compliance with all laws, rules and regulations governing charges for healthcare services pursuant to the Florida no fault law when in fact it knows that the Charges are unreasonable, thereby intentionally misleading the Plaintiff and class members

30.    "When a contract fails to fix a price, a reasonable price is implied." Giacalone v. Helen Ellis Memorial Hosp. Foundation, Inc, 8 So.3d 1232, 1235 (Fla. 1st DCA 2009).

31.    Pursuant to the PIP Statute, Defendant may charge only a "reasonable amount" for emergency services. § 627.736(5)(a) Fla Stat.

32.    In direct contravention of the PIP Statute's requirement that hospitals charge only a "reasonable amount," Defendant bills for emergency services provided to PIP-covered patients at grossly inflated, unreasonable rates.  Defendant charges PIP-covered patients rates for services that are at least 85% higher than Defendant accepts for reimbursement for similar services provided to PIP patients without other insurance or a claim for damages against a third party.

33.    Upon information and belief, all uninsured emergency patients qualify for an "Uninsured Discount Policy," under which Defendant accepts reduced payment for similar services. See Pricing Estimates and Information – Uninsured Patients, Doctors Hospital of Sarasota, https://doctorsofsarasota.com/patient-financial/index.dot?page_name=uninsured_discount (last visited Sept. 23, 2019).

34.     Upon information and belief, Defendant regularly and customarily accepts significantly lower payment for similar services rendered to insured emergency patients when not covered by PIP, pursuant to "negotiated" pricing.

35.     Upon information and belief, the only time Defendant accepts payment in the amount listed on the "Charge Master" is for PIP-covered services when the service is PIP-covered and the patient has secondary insurance or a relevant third-party claim.

36.     The price listed on the "Charge Master" is not the amount that Defendant regularly and customarily accepts for similar services but is an artificially heightened price.

37.     Further, Defendant does not consider comparable local or federal fee schedules when setting rates for medical services.

38.     Defendant regularly bills PIP patients with no secondary insurance over 1,000% of the Medicare fee schedule for services provided.

39.     As a direct result of Defendant's billing at exorbitant and unreasonable rates, PIP emergency care patients are billed more for their out-of-pocket portion of the rates charged for emergency healthcare services than they would have been if such services were provided at reasonable rates.

40.     Defendant's exorbitant and unreasonable rates also deplete the PIP coverage available to the patients at a faster rate, resulting in the patients being billed out-of-pocket for additional medical services rendered by Defendant and third-party providers that would have otherwise been covered under PIP.

**C.     Plaintiff David Day's Experience with Doctor's Hospital**

41.      On or about February 21, 2017, Mr. David Day was involved in an automobile accident. As a result of the accident, Mr. David Day needed medical care and treatment, and drove himself to SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA.   Upon arrival, Mr. David Day was required to execute a "Conditions of Admission" form (see Exhibit "A").   Among other things, the "Conditions of Admission" form had Mr. David Day acknowledge that he agreed to pay "the rates stated in the hospital's price list (known as the 'Charge Master')."   The so-called "price list," however, was never provided to Mr. David Day.

42.      The "Conditions of Admission" form expressly provides that SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA "will not retain benefits in excess of the amount owed to the provider for the care and treatment rendered during the admission." (Exhibit "A" at ¶ 7). The Hospital received excess payment from Plaintiffs' No Fault insurance policies and failed to notify Plaintiffs of the excess and or apply or return the excess to Plaintiff or any class members.

43.      The Plaintiff and Class members have an expectation that when excess money was received by the Defendant from over-charges or otherwise, it would be returned.

44.      The emergency room physician who treated Mr. David Day ordered an x-ray of his left shoulder with two views.

45.      SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA billed $1,471.00 for the left shoulder x-ray for this Radiological Service.

46.      SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA billed $18.00 for three (3) pills for ibuprofen 800 mg.

47.     SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA billed $1,621.00 for a level three (3) emergency visit.

48.     Because of the exorbitant and unreasonable amounts of these charges, Plaintiff David Day's PIP-coverage of $10,000.00 was prematurely exhausted. Mr. Day then had to pay for healthcare services required for treatment of the injuries he sustained in the accident which would have been covered by his PIP benefits if not prematurely exhausted by the hospital's unreasonable charges.

49.     To date, Plaintiff David Day has been charged over $3,110.00 by SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA for healthcare services. Mr. Day has also separately charged over $5,000 out of pocket for medical services rendered by third parties related to his automobile accident, and these charges would have been covered in full or in part by his PIP benefits if not prematurely exhausted by the exorbitant and unreasonable amounts of the hospital's charges or if the hospital returned the amount it received in overpayment.

50.     Based on the facts set forth above Plaintiff, David Day received bills from SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA for the erroneous charges in violation of the FDUTPA.

**D.     Plaintiffs and All Class Members Have Been Charged Unreasonable Rates for Healthcare Services**

51.     Defendant's charges to Plaintiff David Day, and to the Class Members, for x-rays, prescription and emergency visit are unreasonable, exorbitant, and unfairly inflated:

**X-Ray:**

52.     Plaintiff was billed in excess of $1,400 for an x-ray.

53.     The Medicare Part B rates for a shoulder x-ray range from approximately $58.00 to $60.00.  Defendant billed the Plaintiffs approximately 2,500% more than the Medicare rate for the performance of a left shoulder x-ray.

54.     Upon information and belief, Defendant's charges for x-rays greatly exceed the amount Defendant usually and customarily accepts for such service when billed to and paid by a private non-PIP insurer, such as an HMO or private medical insurer, including insurers that do not have a contract with Defendant that rendered the x-ray.

55.     Upon information and belief, Defendant's charges for x-rays greatly exceed the amount Defendant usually and customarily accepts for such service when billed to and paid by an uninsured patient.

56.     Upon information and belief, Defendant accepts the amounts paid pursuant to the Medicare Part B Fee Schedule as reimbursement from Medicare patients for similar services.

57.     At all times set forth herein, Defendant knew and was aware that its charges were unreasonable.

58.     In fact, SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA automatically reduces the amount it will accept from PIP insured patients that do not have other insurance or a claim for damages against a third party by a minimum of 85%.

**Doctor's Hospital Emergency visit:**

59.     Plaintiff was billed in excess of $1,621.00 for a level three (3) emergency visit.

60.     The Florida Medicare Part B rates for a level three (3) emergency visit is approximately $127.20.  Defendant billed the Plaintiffs approximately 1,200% more than the Medicare rate for the performance of a level three (3) emergency visit.

61.     Upon information and belief, Defendant's charges for a level three (3) emergency visit greatly exceed the amount Defendant usually and customarily accepts for such service when billed to and paid by a private non-PIP insurer, such as an HMO or private medical insurer, including insurers that do not have a contract with Defendant that rendered the emergency visit.

62.     Upon information and belief, Defendant's charges for a level three (3) emergency visit greatly exceed the amount Defendant usually and customarily accepts for such service when billed to and paid by an uninsured patient.

63.     Upon information and belief, Defendant accepts the amounts paid pursuant to the Medicare Part B Fee Schedule as reimbursement from Medicare patients for similar services.

64.     At all times set forth herein, Defendant knew and was aware that its charges were unreasonable.

65.     In fact, SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA automatically reduces the amount it will accept from PIP insured patients that do not have other insurance or a claim for damages against a third party by a minimum of 85%.

**Prescription:**

66.     Plaintiff was billed in excess of $18.00 for three pills of ibuprofen 800mg.

67.     According to the Workers Compensation Fee Schedule, prescriptions are to be reimbursed at the **average wholesale price** plus $4.18 for the dispensing fee. Florida Statutes § 440.13(12)(c).

68.     Upon information and belief, Defendant's charges for three pills of ibuprofen 800mg greatly exceed the amount Defendant usually and customarily accepts for such service when billed to and paid by a private non-PIP insurer, such as an HMO or private medical insurer, including insurers that do not have a contract with Defendant that were prescribed  three pills of ibuprofen 800mg.

69.     Upon information and belief, Defendant's charges for three pills of ibuprofen 800mg greatly exceed the amount Defendant usually and customarily accepts for such service when billed to and paid by an uninsured patient.

70.     Upon information and belief, Defendant accepts the amounts paid pursuant to the Medicare Part B Fee Schedule as reimbursement from Medicare patients for similar services.

71.     At all times set forth herein, Defendant knew and was aware that its charges were unreasonable.

72.     In fact, SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA automatically reduces the amount it will accept from PIP insured patients that do not have other insurance or a claim for damages against a third party by a minimum of 85%.

### E.     Plaintiff and All Class Members Have Received a Statement

73.     Plaintiffs received statements with no indication of treatment and procedures that were performed to the Plaintiff. Upon information and belief,  unless a patient specifically

requests a detailed statement, Defendant does not provide patients with itemized invoices of any kind.

74.     Plaintiffs received statements at an inflated rate for healthcare services that reflected unreasonable charges for services that exceed the amount Defendant customarily charges for like services.

75.     Defendant knew or should have known the amount willfully charged for services provided to Plaintiff reflected on the statement was unfair, deceptive, and prohibited by the PIP Statute.

## CLASS ACTION ALLEGATIONS

76.     Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 75.

77.     Pursuant to Florida Rules of Civil Procedure 1.220(a) and 1.220(b)(3), Plaintiffs bring this action on behalf of themselves and a class of all other persons similarly situated and defined as follows:

> All individuals (or their guardians or representatives) who received PIP-covered emergency healthcare services at Defendant Sarasota Doctors Hospital, Inc. d/b/a Doctors Hospital of Sarasota facility in Florida who:
> 1. have a third-party liability claim; and
> 2. (a) were billed by the facility for any portion of the charges for such services; and/or (b) had their $10,000 of PIP coverage prematurely exhausted by the facility's charges for such services and, as a result, were billed for additional healthcare services rendered by the facility and/or third-party providers that would otherwise have been covered under PIP.
>
> Excluded from the Class are Defendants, any officers or directors thereof, together with the legal representatives, heirs, successors, or assigns of any Defendant, and any judicial officer assigned to this matter and his or her immediate family.

78.     This action has been brought and may properly be maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements. Plaintiffs seek to represent an ascertainable Class with a well-defined community of interest in the questions of law and fact involved in this matter.

79.     Although the precise number of Class members is unknown and can only be determined through appropriate discovery, Plaintiffs believe and, on that basis, allege that the proposed Class is so numerous that joinder of all members would be impracticable. Based on the number of patients that Defendant treats in their emergency care department following automobile accidents, it is apparent that thousands of consumers have been billed exorbitant prices for the medical services referenced herein such that the number of individual plaintiffs would make joinder impossible.

80.     Questions of law and fact common to the Plaintiff Class exist that predominate over questions affecting only individual members, including *inter alia*:

   a.  Whether Defendant's charges to PIP patients for Radiological Services was "reasonable";

   b.  Whether Defendant's charges to PIP patients for an Emergency Visits was "reasonable"';

   c.  Whether Defendant's charges to PIP patients for Pharmaceuticals was "reasonable";

   d.  Whether Defendant had a policy and practice of pricing, billing, and seeking payment from PIP patients for healthcare services at unreasonable rates;

   e.  Whether Defendant's inclusion of a provision in its Conditions of Admission contracts requiring patients to make payments according to Defendants'

"Charge Master" rates is a violation of the PIP Statute and void as a matter of law;

f.   Whether Defendant's "Charge Master" represents the "usual and customary" charges of Defendant for similar services;

g.   Whether the publication and use of Defendant's artificially inflated "Charge Master" was deceptive, unlawful, or unfair in any respect thereby violating Florida's Deceptive and Unfair Trade Practices Act. (FDUTPA), Fla. Stat. § 501.201, *et seq.*;

h.   Whether Defendant's practices of overcharging for healthcare services were deceptive, unlawful, or unfair in any respect thereby violating Florida's Deceptive and Unfair Trade Practices Act. (FDUTPA), Fla. Stat. § 501.201, *et seq.*;

i.   Whether Defendant's charges to patients that are unreasonable and in excess of the rates customarily charged for similar services are void as a matter of law pursuant to Florida Statutes Sections 627.736(5)(b)(1)(b)-(c).

j.   Whether Defendants' practices of overcharging for healthcare services constituted a breach of contract;

k.   Whether Defendant's practices of overcharging for healthcare services constituted a breach of the implied covenants of good faith and fair dealing; and

l.   Whether Defendant's conduct injured the putative Class members and, if so, the extent of the damages.

81.   Plaintiff is a member of the putative Class.  The claims asserted by the Plaintiff in this action are typical of the claims of the members of the putative Class, as the claims arise from the same course of conduct by the Defendant and the relief sought is common.

Defendant billed all Plaintiffs in violation of the FDUTPA based upon overcharges billed

to Plaintiffs for healthcare services and received only partial payment for those services

from the Plaintiffs' PIP insurance carriers. Plaintiffs were then left with the remaining

outstanding balance on their hospital bills and/or were billed for additional medical

services rendered by Defendant and third party providers that would have otherwise  been

covered  under  PIP  had  Defendants'  inflated  charges  not  prematurely exhausted the

coverage.

82.    Plaintiffs  will  fairly  and  adequately  represent  and  protect  the  interests  of  the

members of the putative Class, as their interests are coincident with, not antagonistic to, the

other Class members.  Plaintiffs have retained counsel competent and experienced in both

the FDUTPA and class action litigation.

83.    Certification  of  the  Class  is  appropriate  pursuant  to  Florida  Rule  of  Civil

Procedure 1.220 because questions of law or fact common to the respective members of the

Class  predominate  over  questions  of  law  or  fact  affecting  only  individual  members.

This predominance makes class litigation superior to any other method available for the

fair and efficient adjudication of these claims including consistency of adjudications.

Absent a class action it would be highly unlikely that the members of the Class would

be able to protect their own interests because the cost of litigation through individual

lawsuits might exceed the expected recovery.

84.    A class action is an appropriate method for the adjudication of the controversy in

that it will permit a large number of claims to be resolved in a single forum simultaneously,

efficiently, and without the unnecessary hardship that would result from the prosecution of

numerous individual actions and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create.

85.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of the class action.

## COUNT I
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT § 501.204(1):
## DECEPTIVE PRACTICES

86.     Plaintiffs re-allege and reaffirm herein all of the allegations contained in paragraphs 1 through 75.

87.     In Florida, unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. § 501.204(1), Fla. Stat.

88.     Plaintiffs, individually, and the members of the putative Class are "consumers" within the meaning of Florida Statute Section 501.203(7).

89.     On or about February 21, 2017, Plaintiff sought treatment from SARASOTA DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA emergency department following a motor vehicle accident.

90.     At all times, Defendant knew or should have known that Plaintiff's bills for healthcare services were governed by the Florida Mandatory No Fault Automobile Reform Act. Florida Statute §627.730-627.7405.

91.     Defendant engaged in the unfair and deceptive trade practices described herein in violation of the PIP Statute, which prohibits it from charging more than the amount "the

institution customarily charges for like services or supplies" for emergency medical services billed under PIP. Fl. Stat. §726.736(5)(a)(1).

92.    Defendant actively, willfully, and deceptively represents that the prices listed on the "Charge Master" are the "customary charges," rather than an artificially inflated list that only applies to a certain class of people, by publishing it on Defendant's website and in incorporating it into the "Conditions of Admission."

93.    Defendant's conduct related to the "Charge Master" constitutes "deceptive" business practices within the meaning of FDUTPA.

94.    Plaintiff and the members of the putative Class relied on this deceptive representation when they signed the "Conditions of Admission" and paid the Defendant's bills for PIP covered emergency services.

95.    As a result of these unfair and deceptive trade practices, Plaintiff and the members of the putative Class, have suffered actual damages in that they have paid and/or become obligated to pay excessive and artificially inflated medical bills for emergency services as a result of Defendant's billing policies and/or have paid or become obligated to pay other health care providers out-of-pocket because the Defendant's inflated rates prematurely exhausted their PIP coverage, and are entitled to their actual damages.

96.    As a result of the aforementioned conduct, Plaintiff and the members of the putative Class, are entitled to permanent injunctive relief to prevent Defendant from continuing to engage in these unfair and deceptive trade practices and to stop all efforts to collect excess unpaid charges. § 501.211(1), Fla. Stat.

97.      Pursuant to Florida Statute Section 501.211(2), Plaintiff, individually and as
members of the putative Class, are entitled to recover actual damages plus costs and
reasonable attorneys' fees in this action.

**COUNT II**
**VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT §**
**501.204(1):**
**UNFAIR BUSINESS PRACTICES**

98.      Plaintiffs re-allege and reaffirm herein all of the allegations contained in
paragraphs 1 through 75.

99.      In Florida, unconscionable acts or practices, and unfair or deceptive acts or
practices in the conduct of any trade or commerce are unlawful. § 501.204(1), Fla. Stat.

100.     Plaintiffs, individually, and the members of the putative Class are "consumers"
within the meaning of Florida Statute Section 501.203(7).

101.     On or about February 21, 2017, Plaintiff sought treatment from SARASOTA
DOCTORS HOSPITAL, INC. d/b/a DOCTORS HOSPITAL OF SARASOTA emergency
department following a motor vehicle accident.

102.     At all times, Defendant knew or should have known that Plaintiff's bills for
healthcare services were governed by the Florida Mandatory No Fault Automobile Reform
Act. Florida Statute §627.730-627.7405.

103.     Defendant willfully used a method of billing that was an unfair, deceptive, and an
unconscionable trade practice.

104.     Defendant knew that the charged amount it willfully sought to collect from
Plaintiff was improper because the amount sought to be collected by Defendant from
Plaintiffs is excessive in violation of the statutory fee schedule. See § 627.736, Fla. Stat.

105.    Defendant's practice of not providing patients with itemized bills nor informing patients of their right to obtain itemized bills aids in Defendant's deception.

106.    Defendant's practice of charging exorbitant and unreasonable rates for PIP-covered healthcare services following motor vehicle accidents constitutes unfair, deceptive, or unconscionable trade practices in violation of Florida's Deceptive and Unfair Trade Practices Act as provided by §§ 501.201-.213, Florida Statutes.

107.    Defendant engaged in the unfair and deceptive trade practices described herein in violation of the PIP Statute, which prohibits it from charging more than a "reasonable amount" for emergency medical services billed under PIP. Defendant utilized the patients' PIP coverage as a means to bill and be paid for unreasonable, inflated charges for emergency healthcare services.

108.    Defendant's pricing practices with regard to PIP-insured patients are unconscionable and constitute unfair and deceptive methods of competition in violation of one or more of the following:

a.    The violation of § 627.736(5)(a), Florida Statutes, which prohibits hospitals and other medical providers from charging more than a reasonable amount for treating PIP-covered patients; and/or

b.    The violation of § 627.736(5)(a), Florida Statutes, which prohibits hospitals and other medical providers from charging for PIP-covered medical services at rates in excess of their customary charges for like services.

109.    Defendant's conduct amounts to "unfair" business practices insofar as Defendant fails to charge Plaintiff and Class members reasonable rates as required by the PIP Statute. Defendants' practices offend established public policies, and are immoral,

unethical, oppressive, and unscrupulous. Once Defendants' emergency facilities' billing department determines that a patient's medical care will be covered by PIP insurance, Defendants' practice of overcharging the patient is triggered and carried out by the submission of the bills to the PIP insurance carrier.

110.    As a result of these unfair and deceptive trade practices, Plaintiff and the members of the putative Class, have suffered actual damages in that they have paid and/or become obligated to pay excessive and artificially inflated medical bills for emergency services as a result of Defendant's billing policies and/or have paid or become obligated to pay other health care providers out-of-pocket because the Defendant's inflated rates prematurely exhausted their PIP coverage, and are entitled to their actual damages.

111.    As a result of the aforementioned conduct, Plaintiff and the members of the putative Class, are entitled to permanent injunctive relief to prevent Defendant from continuing to engage in these unfair and deceptive trade practices and to stop all efforts to collect excess unpaid charges. § 501.211(1), Fla. Stat.

112.    Pursuant to Florida Statute Section 501.211(2), Plaintiff, individually and as members of the putative Class, are entitled to recover actual damages plus costs and reasonable attorneys' fees in this action.

## COUNT III
## BREACH OF CONTRACT

113.    Plaintiffs re-allege and reaffirm herein all of the allegations contained in paragraphs 1 through 75.

114.    Plaintiff entered into a contract with Defendants' emergency care facilities titled "Conditions of Admission" upon entering the emergency department. Each of the

Plaintiffs entered into the exact same or substantially similar contract with the Defendants with the same or substantially similar terms.

115.    The "Conditions of Admission" contract provides that Plaintiffs "promise to pay the patient's account at the rates stated in the hospital's price list (known as the "Charge Master") effective on the date the charge is processed for the service provided, which rates are hereby expressly incorporated by reference as the price term of this agreement to pay the patient's account."

116.    Plaintiffs were not provided a copy of the hospital's price list at the time of their admission.  As a result of the Contracts' vague, ambiguous, undefined, and nondescript pricing term, applicable law implies a contractual obligation on Plaintiffs to pay for no more than the reasonable value services provided under the Contracts, and a corresponding obligation on Defendants to bill for no more than the reasonable value of the services provided under the Contracts.

117.    Moreover, as the substance of the Contracts is the subject of statutory regulation under the PIP Statute, the parties are presumed to have entered into their agreement with reference to such statutory regulation.  The requirement on Defendants to bill no more than a reasonable amount for PIP-covered services, as provided in the PIP Statute, is therefore part of the contract between Defendants and Plaintiffs, and any contractual clause that purports to allow Defendants to bill more than a reasonable rate is void as a matter of law.

118.    Under Florida law, Defendants breached the Contracts by charging unreasonable amounts for PIP-covered Healthcare Services that are several times higher than reimbursement rates from other categories of patients signing the same Contract,

several times higher than the cost to Defendants for providing the treatment and services, and several times higher than the reasonable value of the treatment and services provided.

119.    Further, the "Conditions of Admission" also expressly provides that Defendant "will not retain benefits in excess of the amount owed to the provider for the care and treatment rendered during the admission." (Exhibit "A" at ¶ 7).

120.    Defendant breached the express provision contained in the "Conditions of Admission" contract, not only retaining benefits in excess of the amount rightfully owed by the insured patients, but by continuing to bill and to attempt to collect amounts not actually owed by the PIP-insured patients.

121.    As a result of Defendant's breach of contract, Plaintiffs have been damaged in that they have paid and/or become obligated to pay excessive, artificially inflated, and unreasonable medical bills for Healthcare Services or other PIP-covered medical services.

122.    The "Conditions of Admission" provides Defendant with reasonable attorneys' fees should the Defendant need to enforce the terms of the contract, and Plaintiff should be entitled to the reciprocal right.

## **COUNT IV**
## **BREACH OF THE IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING**

123.    Plaintiffs re-allege and reaffirm herein all of the allegations contained in paragraphs 1 through 75.

124.    A claim for breach of the implied covenant of good faith and fair dealing must accompany an allegation that an express term of the contract has been breached. See Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc., 785 So. 2d 1232, 1234 (Fla.4th DCA 2001).

125.     Plaintiffs have performed all or substantially all of their obligations under the contract with Defendant by paying the legitimate portions of their bills or were excused from such obligations.

126.     All conditions required for Defendant's performance had occurred.

127.     Defendant breached an express term of the "Conditions of Admission" by retaining excess benefits in the amount that Defendant billed Plaintiff above what was reasonable.

128.     The Plaintiff and Class members have an expectation that when excess money was received by the Defendant from over-charges or otherwise, it would be returned.

129.     Defendant's retention of excess money breached the implied covenant of good faith and fair dealing by unreasonably withholding the benefits retained in violation of the "Conditions of Admission".

130.     As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members have been damaged in that they have paid and/or become obligated to pay excessive, artificially inflated, and unreasonable medical bills for Healthcare Services or other PIP-covered medical services.

## COUNT V
## UNJUST ENRICHMENT

131.     Plaintiffs re-allege and reaffirm herein all of the allegations contained in paragraphs 1 through 75.

132.     Plaintiffs conferred a benefit upon Defendant by rendering payment above the amount reasonably and rightfully owed for PIP covered services.

133.    Defendant was aware of this benefit because the benefit was received a result of
Defendant's publication and use of an artificially inflated "Charge Master" in violation of
No-Fault Law and Florida's Deceptive and Unfair Trade Practices Act.

134.    Defendant accepted and retained those benefits by accepting payment and
continuing to bill class members at unreasonable, unfair, and unusually high rates.

135.    Defendant has been unjustly enriched as a result, and under the circumstances, it
would be inequitable for Defendant to retain the payment for services above a reasonable
price or what is usually and customarily accepted for such services.

**COUNT VI**
**DECLARATORY RELIEF PURSUANT TO  28 U.S.C. § 2201**

136.    Plaintiffs re-alleges and reaffirms herein all of the allegations contained in
paragraphs 1 through 75.

137.    There is a controversy between Plaintiffs and SARASOTA DOCTORS
HOSPITAL, INC., d/b/a DOCTORS HOSPITAL OF SARASOTA as to all claims and
charges that SARASOTA DOCTORS HOSPITAL, INC., d/b/a DOCTORS HOSPITAL
OF SARASOTA has submitted or caused to be submitted to Plaintiffs that were not
lawfully calculated.

138.    To the extent that any such charges are pending through the date of this
Complaint and the trial in this case for charges that were not lawfully calculated, Plaintiff
contends that no charges are owed.

139.    The charges billed to Plaintiffs by SARASOTA DOCTORS HOSPITAL, INC.,
d/b/a DOCTORS HOSPITAL OF SARASOTA were unlawful because they were not
reasonable based federal and local medical fee schedules and exceeded "the amount the

person or institution customarily charges for like services or supplies," in violation of Florida Statute Section 627.736(5)(a).

140.     At all times relevant, SARASOTA DOCTORS HOSPITAL, INC., d/b/a DOCTORS HOSPITAL OF SARASOTA knew that it was charging class members at an unreasonable rate in excess of the amount it customarily accepts for similar services and treatment.

141.     An insured is not required to pay a claim or charges "to any person who knowingly submits a false or misleading statement relating to the claim or charges." Fla. Stat. § 627.736(5)(b)(1)(c). Therefore, the charges billed to Plaintiffs were not owed pursuant Florida Statutes Section 627.736(5)(b)(1).

142.     Further, an insured is not required to pay a claim or charges "for services or treatment that were not lawful at the time rendered." Fla. Stat. § 627.736(5)(b)(1)(b).  In the context of the No-Fault Law, "lawful or lawfully" means "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." Fla. Stat. §627.732(11).

143.     Because SARASOTA DOCTORS HOSPITAL, INC., d/b/a DOCTORS HOSPITAL OF SARASOTA was not in compliance with Florida Statute Section 627.736(5)(a) when it billed Plaintiffs unreasonable and uncustomary amounts for PIP-covered emergency services, those bills were unlawful as defined Florida Statutes Section 627.732 (11). Therefore, the charges billed to Plaintiffs were not owed pursuant Florida Statutes Section 627.736(5)(b)(1).

**WHEREFORE,** Plaintiff David Day, individually and on behalf of all others

similarly-situated, demand judgement against, Defendant, SARASOTA DOCTORS HOSPITAL, INC., doing business under the name DOCTORS HOSPITAL OF SARASOTA, for injunctive relief, damages, interest, and costs and, all other relief deemed just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all matters triable as of right by a jury.

Respectfully submitted,

**ROSENBERG LAW, P.A.**

   s/Bruce S. Rosenberg
BRUCE S. ROSENBERG
Florida Bar No. 994782
rosenberg@rosenberglawpa.com
ALEXIS ROSENBERG
Florida Bar No. 335400
arosenberg@rosenberglawpa.com
6950 Cypress Road, Suite 107
Plantation, Florida 33317
(954) 790-6100
service@rosenberglawpa.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 30th day of September, 2019, the foregoing document is being served on all counsel of record, via transmission of Notices of Electronic Filing generated by CM/ECF.

s/Alexis Rosenberg
Alexis Rosenberg, Esq.

 **Doctors Hospital of Sarasota**
HOSPITALS PERFORMING AT A HIGHER STANDARD®
PO BOX 9060
CLEARWATER FL 33758
PATIENT ACCOUNTING

SSC08947 666397 382297499



### We appreciate the opportunity to serve you!

Thank you for trusting us with your healthcare needs. We hope our care exceeded your expectations. Please contact us if we can be of further assistance.

**Pay online at:**
**www.doctorsofsarasota.com/billpay**

| Statement Date: | Account Number: | Page 1 of 1 |
|---|---|---|
| 5/17/2017 | | |

---

## ACCOUNT ACTIVITY

| | |
|---|---|
| Account Number | |
| Date of Service | 2/21/2017 |
| Total Amount For Hospital Services** | $ 2,312.50 |
| Insurance Payments to Date | $ 1,086.00 |
| Due From Insurance | $ 0.00 |
| Patient Payments to Date | $ 80.00 |
| Payments to Date | $ 1,166.00 |
| **Remaining Account Balance** | **$ 1,146.50** |
| ***AMOUNT YOU OWE** | **$ 1,146.50** |

*The amount you owe may include copay, deductibles or non-covered charges.
**Total Amount For Hospital Services is the total amount the hospital expects to receive for services after all discounts have been applied.

Please note that professional services provided by physicians and other healthcare providers who do not work for the hospital are not part of the hospital bill. These other providers may bill separately for their services.

## A MESSAGE FOR YOU...

Thank you for choosing Doctors Hospital of SarasotaPlease call 800-523-5840 for account information M-F 8AM-530PM

This is the hospital bill for Emergency services from February 21, 2017 through February 21, 2017.

## PAYMENT OPTIONS

Pay online at www.doctorsofsarasota.com/billpay
Available 24/7

Pay with your smart phone by scanning this QR code

Pay-by-phone or call Customer Service at:
800-523-5840 Available Mon-Fri 8AM - 5PM ET

Mail in a check or credit card information with the section below.

Disponible asistencia para el idioma español.

---

DETACH HERE AND RETURN BOTTOM PORTION WITH PAYMENT

| Patient | Account No. | Date Due | Amount Now Due | Amount Paid |
|---|---|---|---|---|
| | | Upon Receipt | $ 1,146.50 | $ |

Check here if your address or insurance information has changed. Please indicate changes on the back of this page.

Please do not send cash.
**Make checks payable to: DOCTORS HOSPITAL**

 VISA  MasterCard  DISCOVER  AMEX

**SARASOTA DOCTORS HOSP.**
**01147**
**P.O. BOX 740743**
**CINCINNATI OH 45274-0743**

Account No. | | | | | | | | | | | | | | | | | | | |

Expiration Date _____

Authorized Signature _____



Exhibit "A"

## Conditions of Admission and Consent for Outpatient Care
Doctors Hospital

| | MR# ███ | Serv: EMERGENCY | Status: REG ER | Date ██ | Acct # ███ |

In this document, Patient means the person receiving treatment. Patient Representative means any person acting on behalf of the Patient and signing as the Patient's representative. Use of the word I, you, your or me may in context include both the Patient and the Patient Representative. With respect to financial obligations I or me may also, depending on the context, mean financial Guarantor.

Provider means the hospital and may include healthcare professionals on the hospital's staff and/or hospital based physicians, which include but are not limited to: Emergency Department Physicians, Pathologists, Radiologists, Anesthesiologists, Hospitalists, certain other licensed independent practitioners and any authorized agents, contractors, affiliates, successors or assignees acting on their behalf.

Legal Relationship between Hospital and Physicians. Most or all of the physicians performing services in the hospital are independent and are not hospital agents or employees. Independent physicians are responsible for their own actions and the hospital shall not be liable for the acts or omissions of any such independent physicians.

1.  Consent to Treatment. I consent to the procedures which may be performed during this hospitalization or during an outpatient episode of care, including, but not limited to, emergency treatment or services, and which may include laboratory procedures, xray examination, diagnostic procedures, medical, nursing or surgical treatment or procedures, anesthesia, or hospital services rendered as ordered by the Provider. I consent to allowing students as part of their training in health care education to participate in the delivery of my medical care and treatment or be observers while I receive medical care and treatment at the Hospital, and that these students will be supervised by instructors and/or hospital staff.

2. Consent to Treatment Using Telemedicine. I consent to treatment involving the use of electronic communications (Telemedicine) to enable helath care providers at different locations to share my individual patient medical information for diagnosis, therapy, follow-up, and/or education purposes. I consent to forwarding my inforamtion to a third party as needed to receive Telemedicine services, and I understand that existing confidentiality protections apply. I acknowledge that while Telemedicine can be used to provide improved access to care, as with any medical procedure, there are potential risks and no results can be guaranteed or assured. This risks include, but are not limited to: technical problems with the information transmission or equipment failures that could result in lost information or delays in treatment. I understand that I have a right to withhold or withdraw my comsnet to the use of Telemedicine in the course of my care at any time, without affecting my right to future treatment and without risking the loss or withdrawal of any program benefit to which I would otherwise be entitled.

3.  Consent to Medication Not Yet FDA Approved and/or Medication Prepared/Repackaged by Outsourcing or Compounding Pharmacy. As part of the services provided, you may be treated with a medication that has not received FDA approval. You may also receive a medication that has been prepared or repackaged by an outsourcing facility or compounding pharmacy. Certain medications, for which there are no alternatives or which your physician recommends, may be necessary for potentially life-saving treatment.

4. Consent to Photographs, Videotapes and Audio Recordings. I consent to photographs, videotapes, digital or audio recordings, and/or images of me being recorded for security purposes and/or the hospital's quality improvement and/or risk management activities. I understand that the facility retains the ownership rights to the images and/or recordings. I will be allowed to request access to or copies of the images and/or recordings when technologically feasible unless otherwise prohibited by law. I understand that these images and/or recordings will be securely stored and protected. Images and/or recordings in which I am identified will not be released and/or used outside of the facility without a specific written authorization from me or my legal representative unless otherwise required by law.

5. Financial Agreement. In consideration of the services to be rendered to Patient, Patient or Guarantor individually promises to pay the Patient's account at the rates stated in the hospital's price list (known as the Charge Master) effective on the date the charge is processed for the service provided, which rates are hereby expressly incorporated by reference as the price term of this agreement to pay the patient's account. Some special items will be priced separately if there is no price listed on the Charge Master. An estimate of the anticipated charges for services to be provided to the Patient is available upon request from the hospital. Estimates may vary significantly from the final charges based on a variety of factors, including, but not limited to, the course of treatment, intensity of care, physician practices, and the necessity of providing additional goods and services.

Professional services rendered by independent contractors are not part of the hospital bill. These services will be billed to the Patient separately. I understand that physicians or other health care professionals may be called upon to provide care or services to me or on my behalf, but that I may not actually see, or be examined by, all physicians or health care professionals participating in my care, for example. I may not see physicians providing radiology, pathology, EKG interpretation and anesthesiology services. I understand that in most instances, there will be a separate charge for professional services rendered by physicians to me or on my behalf, and that I will receive a bill for these professional services that is separate from the bill for hospital services.

  *COA*

Page 1 of 5

Exhibit "B"

## Conditions of Admission and Consent for Outpatient Care
Doctors Hospital
████████████ MR ████████████ Serv: EMERGENCY Status: REG ER Date: ████████████ Acct # ████████████

The hospital will provide a medical screening examination as required to all Patients who are seeking medical services to determine if there is an emergency medical condition, without regard to the Patient's ability to pay. If there is an emergency medical condition, the hospital will provide stabilizing treatment within its capacity. However, Patient and Guarantor understand that if Patient does not qualify under the hospital's charity care policy or other applicable policy, Patient or Guarantor is not relieved of his/her obligation to pay for these services.

If supplies and services are provided to Patient who has coverage through a governmental program or through certain private health insurance plans, the hospital may accept a discounted payment for those supplies and services. In this event any payment required from the Patient or Guarantor will be determined by the terms of the governmental program or private health insurance plan. If the Patient is uninsured and not covered by a governmental program, the Patient may be eligible to have his or her account discounted or forgiven under the hospital's uninsured discount or charity care programs in effect at the time of treatment. I understand that I may request information about these programs from the hospital.

I also understand that as a courtesy to me, the hospital may bill my insurance company offering coverage, but may not be obligated to do so. Regardless, I agree that, except where prohibited by law, the financial responsibility for the services rendered belongs to me, the Patient or Guarantor. I agree to pay for services that are not covered and covered charges not paid in full by insurance coverage including, but not limited to, coinsurance, deductibles, non-covered benefits due to policy limits or policy exclusions, or failure to comply with insurance plan requirements.

6. Third Party Collection. I acknowledge that the Providers may utilize the services of a third party Business Associate or affiliated entity as an extended business office (EBO Servicer) for medical account billing and servicing. During the time that the medical account is being serviced by the EBO Servicer, the account shall not be considered delinquent, past due or in default, and shall not be reported to a credit bureau or subject to collection legal proceedings. When the EBO Servicer's efforts to obtain payment have been exhausted due to a number of factors (for e.g., Patient or Guarantor's failure to pay or make a payment arrangement after insurance adjustments and payments have been credited, and/or the insurer's denial of claim(s) or benefits is received), the EBO Servicer will send a final notice letter which will include the date that the medical account may be returned from the EBO Servicer to the Provider. Upon return to the Provider by the EBO Servicer, the Provider may place the account back with the EBO Servicer, or, at the option of the Provider, may determine the account to be delinquent, past due and in default. Once the medical account is determined to be delinquent it may be subject to late fees, interest as stated, referral to a collection agency for collection as a delinquent account, credit bureau reporting and enforcement by legal proceedings.

I also agree that if the Provider initiates collection efforts to recover amounts owed by me or my Guarantor, then, in addition to the amounts incurred for the services rendered, Patient or Guarantor will pay, to the extent permitted by law: (a) any and all costs incurred by the Provider in pursuing collection, including but not limited to, reasonable attorney's fees, and (b) any court costs or other costs of litigation incurred by the Provider.

7. Assignment of Benefits. Patient assigns all of his/her rights and benefits under existing policies of insurance providing coverage and payment for any and all expenses incurred as a result of services and treatment rendered by the Provider and authorizes direct payment to the Provider of any insurance benefits otherwise payable to or on behalf of Patient for the hospitalization or for outpatient services, including emergency services, if rendered. Patient understands that any payment received from these policies and/or plans will be applied to the amount that Patient or Guarantor has agreed to pay for services rendered during this admission and, that Provider will not retain benefits in excess of the amount owed to the Provider for the care and treatment rendered during the admission. I understand that any health insurance policies under which I am covered may be in addition to other coverage or benefits or recovery to which I may be entitled, and that Provider, by initially accepting health insurance coverage, does not waive its rights to collect or accept, as payment in full, any payment made under different coverage or benefits or any other sources of payment that may or will cover expenses incurred for services and treatment.

I hereby irrevocably appoint the Provider as my authorized representative to pursue any claims, penalties, and administrative and/or legal remedies on my behalf for collection against any responsible payor, employer-sponsored medical benefit plans, third party liability carrier or, any other responsible thrid party (Responsible Party) for any and all benefits due me for the payment of charges associated with my treatment. This assignment shall not be construed as an obligation of the Providers to pursue any such right of recovery. I acknowledge and understand that I maintain my right of recovery against my insurer or health benefit plan and the foregoing assignment does not divest me of such right.

I agree to take all actions necessary to assist Provider in collecting payment from any such Responsible Party should the Provider(s) elect to collect such payment, including allowing the Provider(s) to bring suit against the Responsible Party in my name. If I receive payment directly from any source for the medical charges associated with my treatment, I acknowledge that it is my duty and responsibility to immediately pay any such payments to the Provider(s).

8. Medicare Patient Certification and Assignment of Benefit. I certify that any information I provide in applying for payment under Title XVIII (Medicare) or Title XIX (Medicaid) of the Social Security act is correct. I request payment of authorized benefits to be made on my behalf to the hospital or hospital-based physician by the Medicare or Medicaid program.

 *COA*

Page 2 of 5

## Conditions of Admission and Consent for Outpatient Care
Doctors Hospital

| MR# ███████ | Serv: EMERGENCY | Status: REG ER | Date: ███████ | Acct #: ███████ |

**9. Private Room.** I understand and agree that I am (or Guarantor is) responsible for any additional charges associated with the request and/or use of a private room.

**10. Outpatient Medicare Patients.** Medicare does not provide coverage for ''self-administered drugs'' or drugs that you normally take on your own, with only a few limited exceptions. If you get self-administered drugs that aren't covered by Medicare Part B, we may bill you for the drug. However, if you are enrolled in a Medicare Part D Drug Plan, these drugs may be covered in accordance with Medicare Part D Drug Plan enrollment materials. If you pay for these self-administered drugs, you can submit a claim to your Medicare Part D Drug Plan for a possible refund.

**11. Communications About My Healthcare.** I authorize my healthcare information to be disclosed for purposes of communicating results, findings, and care decisions to my family members and others I designate to be responsible for my care. I will Provide those individuals with a password or other verification means specified by the hospital. I agree I may be contacted by the Provider or an agent of the Provider or an independent physician's office for the purposes of scheduling necessary follow-up visits recommended by the treating physician.

**12. Consent to Telephone Calls for Financial Communications.** I agree that, in order for you, or your EBO Servicers and collection agents, to service my account or to collect any amounts I may owe, I expressly agree and consent that you or your EBO Servicer and collection agents may contact by telephone at any telephone number I have provided to you or your EBO Servicer and collection agents have obtained or, at any number forwarded or transferred from that number, regarding the hospitalization, the services rendered, or my related financial obligations. Methods of contact may include using pre-recorded/artificial voice messages and/or use of an automatic dialing device, as applicable.

**13. Consent to Email or Text Usage for Discharge Instructions and Other Healthcare Communications.** If at any time I provide the Providers an email or text address at which I may be contacted, I consent to receiving discharge instructions and other communications at that email or text address I have provided or you or your EBO Servicer have obtained or, at any text number forwarded or transferred from that number. These discharge instructions may include, but not be limited to: post-operative instructions, physician follow-up instructions, dietary information, and prescription information. The other healthcare communications may include, but are not limited to communications to family or designated representatives regarding my treatment or condition, or reminder messages to me regarding appointments for medical care.

**14. Release of Information.** I hereby permit Providers to release healthcare information for purposes of treatment, payment or healthcare operations. Healthcare information regarding a prior admission(s) at other HCA affiliated facilities may be made available to subsequent HCA-affiliated admitting facilities to coordinate Patient care or for case management purposes. Healthcare information may be released to any person or entity liable for payment on the Patient's behalf in order to verify coverage or payment questions, or for any other purpose related to benefit payment. Healthcare information may also be released to my employer's designee when services delivered are related to a claim under worker's compensation. If I am covered by Medicare or Medicaid, I authorize the release of healthcare information to the Social Security Administration or its intermediaries or carriers for payment of a Medicare claim or to the appropriate state agency for payment of a Medicaid claim. This information may include, without limitation, history and physical, emergency records, laboratory reports, operative reports, physician progress notes, nurse's notes, consultations, psychological and/or psychiatric reports, drug and alcohol treatment and discharge summary. Federal and state laws may permit this facility to participate in organizations with other healthcare providers, insurers, and/or other health care industry participants and their subcontractors in order for these individuals and entities to share my health information with one another to accomplish goals that may include but not be limited to: improving the accuracy and increasing the availability of my health records; decreasing the time needed to access my information; aggregating and comparing my information for quality improvement purposes; and such other purposes as may be permitted by law. I understand that this facility may be a member of one or more such organizations. This consent specifically includes information concerning psychological conditions, psychiatric conditions, intellectual disability conditions, genetic information, chemical dependency conditions and/or infectious diseases including, but not limited to, blood borne diseases, such as HIV and AIDS.

**15. Other Acknowledgements.**

    **a. Personal Valuables.** I understand that the hospital maintains a safe for the safekeeping of money and valuables, and and the hospital shall not be liable for the loss of or the damage to any money, jewelry, documents, furs, fur coats and fur garments, or other articles of unusual value and small size, unless placed in the safe, and shall not be liable for the loss or damage to any other personal property, unless deposited with the hospital for safekeeping. The liability of the hospital for loss of any personal property that is deposited with the hospital for safekeeping is limited to the greater of five hundred dollars ($500.00) or the maximum required by law, unless a written receipt for a greater amount has been obtained from the hospital by the patient. The hospital is not responsible for the loss or damage of cell phones, glasses or dentures or personal valuables unless they are placed in the hospital safe in accordance with the terms as stated above.

    **b. Weapons/Explosives/Drugs.** I understand and agree that if the hospital at any time believes there may be a weapon, explosive device, illegal substance or drug, or any alcoholic beverage in my room or with my belongings, the



## Conditions of Admission and Consent for Outpatient Care

Doctor's Hospital

MR# ▮▮▮▮   Serv EMERGENCY   Status   REG ER   Date ▮▮▮▮   Acct # ▮▮▮▮

hospital may search my room and my belongings located anywhere on hospital propertyt, confiscate any of the above it that are found, and dispose of them as appropriate, including delivery of an item to law enforcement authorities.

c. **Patient Visitation Rights.** I understand that I have the right to receive the visitors whom I or my Patient Representative designates, without regard to my relationship to these visitors. I also have the right to withdraw or deny such consent at any time. I will not be denied visitation privileges on the basis of age race, color, national origin, religion, gender, gender identity and gender expression, and sexual orientation or disability. All visitors I designate will enjoy full and equal visitation privileges that are no more restrictive than those that my immediate family members would enjoy. Further, I understand that the hospital may need to place clinically necessary or reasonable restrictions or limitations on my visitors to protect my health and safety in addition to the health and safety of other Patients. The hospital will clearly explain the reason for any restrictions or limitations if imposed. If I believe that my visitation rights have been violated, I or my representative has the right to utilize the hospital's complaint resolution system.

d. **Additional Provisions for Admission of Minors/ Incapacitated Patient** I, the undersigned, acknowledge and verify that I am the legal guardian or custodian of the minor/incapacitated patient.

**16. Patient Self Determination Act.** I have been furnished information regarding Advance Directives (such as durable power of attorney for healthcare and living wills). Please initial or place a mark next to one of the following applicable statements:

| I executed an Advance Directive and have been requested to supply a copy to the hospital | I have not executed an Advance Directive. wish to execute one and have received information on how to execute an Advance Directive | I have not executed an Advance Directive and do not wish to execute one at this time |
| --- | --- | --- |

**17.** Notice of Privacy Practices I acknowledge that I have received the hospital's Notice of Privacy Practices, which describes the ways in which the hospital may use and disclose my healthcare information for its treatment, payment, healthcare operations and other prescribed and permitted uses and disclosures. I understand that this information may be disclosed electronically by the Provider and/or the Provider's business associates. I understand that I may contact the hospital Privacy Officer designated on the notice if I have a question or complaint.To the extent permitted by law, I consent to the use of disclosure of my information for the purposes described in the hospital's Notice of Privacy Practices.

Acknowledge: _____ (Initial)

**18. Consent to Authorize Use of Email and Text for Patient Billing and Financial Obligation** By my consent below, I authorize the use of any email address or cellular telephone number I provide for receiving **information** relating to my financial obligations, including, but not limited to, payment reminders, delinquent notifications, instructions and links to hospital Patient billing information. I understand and acknowledge that my patient account number may appear in the email or text.

Acknowledge: _____ (Initial) I consent to use of email for Patient billings and financial obligation purposes.

Acknowledge: _____ (Initial) I consent to use of text for Patient billings and financial obligation purposes.

**19. Acknowledgement.** I have been given the opportunity to read and ask questions about the information contained in this form, **specifically including** but not limited to the financial obligation's provisions and assignment of benefit provisions, and I acknowledge that I either have no questions or that my questions have been answered to my satisfaction and that I have signed this document freely and without inducement other than the rendition of services by the Providers.

Acknowledge: _____ (Initial)

**20. Acknowledgement of Notice of Patient Rights and Responsibilities:** I have been furnished with a Statement of Patient Rights and Responsibilities ensuring that I am treated with respect and dignity and without discrimination or distinction based on age, gender, disability,race, color, ancestry, citizenship, religion, pregnancy, sexual orientation, gender identity or expression, national origin, medical condition, marital status, veteran status, payment source or ability, or any other basis prohibited by federal , state, or local law.

Acknowledge: _____ (Initial)

 *COA*

Page 4 of 5

## Conditions of Admission and Consent for Outpatient Care

Doctors Hospital

MR# ███████  Serv EMERGENCY  Status REG ER  Date ███████  Acct # ███████

| Date: 2/21/17  Time: 1509 | I, the undersigned, as the Patient or Patient Representative or, for a minor/incapacitated Patient, as the legal guardian, hereby certify I have read and fully and completely understand this Conditions of Admission and Authorization for Medical Treatment, and that I have signed this Conditions of Admission and Authorization for Medical Treatment knowlingly, freely, voluntarily and agree to be bound by its terms. I have received no promised, assurances, or guarantees from anyone as to the results that may be obtained by a medical treatment or services. If insurance coverage is insufficient, denied altogether, or otherwise unavailable, the undersigned agrees to pay all charges not paid by the insurer. |
|---|---|

Patient/Authorized Representative Signature:

X

If you are not the patient, please identify your relationship to the patient.
(Circle or mark relationship(s) from list below):

Spouse
Parent
Legal Guardian
Neighbor/Friend
Sibling
Healthcare Power of Attorney
Guarantor
Other (please specify):
_____

Witness Signature and Title:

X _____

Additional Witness Signature and Title:
(required for patients unable to sign without a representative or patients who refuse to sign)

X _____

HCA Florida Conditions of Admission and Consent to Outpatient Services English 06.20.2016



*COA*

Page 5 of 5