```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION
```

DAVID DAY,

    Plaintiff,

v.                                     Case No. 8:19-cv-1522-T-33TGW

SARASOTA DOCTORS HOSPITAL,
INC. d/b/a DOCTORS HOSPITAL
OF SARASOTA,

    Defendant.
_____/

**ORDER**

This matter is before the Court upon consideration of Plaintiff David Day's Motion to Remand (Doc. # 156), filed on July 28, 2020. Defendant Sarasota Doctors Hospital, Inc., responded on August 25, 2020. (Doc. # 165). Day filed a reply on September 4, 2020. (Doc. # 178). For the reasons set forth below, the Motion is denied.

**I.  Background**

Day initially filed this action in state court on November 30, 2017. (Doc. # 1) On May 23, 2019, Day filed a motion to amend his complaint in state court, which was granted on June 20, 2019. (Id.). Day asserted state law claims for violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count I), breach of contract (Count

1

II), and breach of the implied covenants of good faith and fair dealing (Count III), alleging that Doctors Hospital overcharged patients, causing their personal injury protection coverage (PIP coverage) to be prematurely exhausted. (Doc. # 1-1). Notably, the amended complaint also included a putative class action, defining the class as:

> All individuals (or their guardians or representatives) who received PIP-covered emergency healthcare services at an HCA-operated facility in Florida and who: (a) were billed by the facility for any portion of the charges for such services; and/or (b) had their $10,000 of PIP coverage prematurely exhausted by the facility's charges for such services and, as a result, were billed for additional medical services rendered by the facility and/or third-party providers that would otherwise have been covered by PIP.
>
> Excluded from the Class are Defendants, any officers or directors thereof, together with the legal representatives, heirs, successors, or assigns of any Defendant, and any judicial officer assigned to this matter and his or her immediate family.[1]

(Doc. # 1-1 at 13-14). On June 24, 2019, Doctors Hospital removed the case to this Court on the basis of diversity jurisdiction under the Class Action Fairness Act (CAFA). (Doc. # 1).

---

1. Day contends it was a scrivener's error that the class definition included those who received medical care at *any* HCA-operated facility in Florida, and that it should instead apply only to those who received care at Doctors Hospital. (Doc. # 177 at 2).

On June 28, 2019, the Court noted that Doctors Hospital had not met its burden of establishing jurisdiction as it had not provided sufficient proof of at least one diverse putative class member. (Doc. # 20). The Court then directed Doctors Hospital to provide such information. (Id.).

In response, Doctors Hospital submitted an affidavit by Greg Warren, Director of Business Intelligence Reporting at HCA Management Services, LP, which provides certain services to Doctors Hospital. (Doc. # 23-1 at ¶ 1). In the affidavit, Warren declared that from June 20, 2015, through June 20, 2019, over 2,000 patients "who had automobile insurance as their primary insurance coverage" received services at Doctors Hospital, totaling over $26 million in medical service charges and over $10 million in payments from automobile insurers. (Id. at ¶ 3-7). Warren then attested that "a number of these patients reside outside of the State of Florida," specifically noting one putative class member from Michigan and another from Ohio. (Id. at ¶ 8). During a case management hearing held on July 24, 2019, the Court found that this affidavit preliminarily satisfied the Court's jurisdictional concerns. (Doc. # 35 at 37-39).

On July 18, 2019, Doctors Hospital filed a motion to dismiss complaint (Doc. # 29), which the Court granted in

3

part on September 16, 2019. (Doc. # 42). With leave of Court, Day filed a second amended complaint on September 30, 2019. (Doc. # 46). On November 21, 2019, Doctors Hospital filed a motion to dismiss the second amended complaint. (Doc. # 66). The Court granted the motion in part. (Doc. # 86). On June 1, 2020, Day filed a motion to certify class (Doc. # 119), which the Court denied on July 23, 2020. (Doc. # 155).

Now, Day seeks remand to state court. (Doc. # 156). Doctors Hospital responded (Doc. # 165), and Day has replied. (Doc. # 177). The Motion is now ripe for review.

## II. Discussion

Day submits that this case must be remanded because the Court lacks subject-matter jurisdiction. (Doc. # 156 at 7). Day argues that Doctors Hospital never met its burden of showing that both the minimal diversity and amount-in-controversy requirements of CAFA were met. (Id. at 11-15). Additionally, Day argues that CAFA's statutory "home-state" and "local-controversy" exceptions apply and warrant that this Court decline to exercise jurisdiction. (Id. at 8-10). The Court will address each of these arguments in turn.

### A. CAFA Jurisdictional Requirements

CAFA "broadens diversity jurisdiction by establishing lower threshold requirements for certain class actions."

4

Lowery v. Ala. Power Co., 483 F.3d 1184, 1193 (11th Cir. 2007). Under CAFA, federal district courts have diversity jurisdiction over class actions in which: (1) "the number of plaintiffs in all proposed plaintiff classes exceeds one hundred," (2) "any member of the plaintiff class is diverse from any defendant," and (3) "the aggregate of the claims of individual class members exceeds $5,000,000, exclusive of any interests and costs." Id. at 1194. (quoting 28 U.S.C. § 1332(d) (2018)).

These "jurisdictional facts are assessed at the time of removal[.]" Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1268 n.12 (11th Cir. 2009). Although a court may consider evidence submitted post-removal, it may only do so "to establish the facts present at the time of removal." Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 946 (11th Cir. 2000). Upon removal, the defendant bears the burden of proving these jurisdictional requirements by a preponderance of the evidence. Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010). However, "no antiremoval presumption attends cases invoking CAFA[.]" Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 89 (2014).

Although the issue of whether denial of class certification defeats CAFA jurisdiction has not been

5

expressly decided by the Eleventh Circuit, courts in this District have repeatedly held that it does not. See, e.g., Blobner v. R.T.G. Furniture Corp., 407 F. Supp. 3d 1270, 1272-73 (M.D. Fla. 2019) (maintaining subject-matter jurisdiction over a CAFA action despite denial of class certification); Perisic v. Ashley Furniture Indus., Inc., No. 8:16-cv-3255-T-17SPF, 2018 WL 8581976, at *4-5 (M.D. Fla. Nov. 7, 2018) (discussing Eleventh Circuit precedent and determining that it warrants holding that denial of class certification does not destroy CAFA jurisdiction). Other circuits that have decided the issue have held the same. See Coba v. Ford Motor Co., 932 F.3d 114, 119 n.2 (3d Cir. 2019) (collecting cases).

### 1. **Minimal Diversity of Citizenship**

Here, the preliminary issue is whether a single putative class member was a citizen of a state other than Florida or Tennessee at the time of removal. (Doc. # 46 at 2) (noting that Doctors Hospital is incorporated in Florida and has its principal place of business in Tennessee).

Doctors Hospital alleges this minimal diversity of citizenship existed at the time of removal by virtue of a Michigan class member. (Doc. # 165 at 9-13). And, in its response to the instant Motion, Doctors Hospital offered two additional putative class members – one a citizen of Indiana,

and another a citizen of Georgia. (Id. at 13-16). Day counters that none of these individuals are class members because Doctors Hospital has failed to show that any of them carried Florida automobile insurance. (Doc. # 177 at 4).

The amended complaint, which was the operative complaint at the time of removal, defined the class as individuals who had their PIP coverage prematurely exhausted by certain hospitals. (Doc. # 1-1 at 13-14). Thus, the amended complaint does not plainly state that the PIP coverage in question must be purchased from a Florida insurer. (Doc. # 1-1). However, Day argues that because Florida's No-Fault Laws, which form the basis of Day's complaint, define PIP as a "Florida personal injury protection policy," the insurance in question must necessarily be a Florida policy. (Doc. # 156 at 10).

It is true that Florida's No-Fault Laws provide that "[o]nly insurers writing motor vehicle liability insurance in this state may provide the required [PIP] benefits[.]" Fla. Stat. § 627.736(1). However, Florida courts have repeatedly found that out-of-state PIP policies can satisfy Florida's No-Fault requirements. See, e.g., Meyer v. Hutchinson, 861 So.2d 1185, 1186-88 (Fla. 5th DCA 2003) (holding that the defendant "had the requisite no-fault coverage while operating her car in Florida" thanks to her Michigan PIP

7

coverage); Jiminez v. Faccone, 98 So.3d 621, 626 (Fla. 2d DCA 2012) (finding that an Illinois insurance policy qualified under Florida's No-Fault laws). This, along with the fact that the amended complaint does not explicitly require that the PIP coverage derive from a Florida-based insurer, establishes that the class member's PIP coverage need not be from a Florida insurer for our purposes.

Here, Doctors Hospital provides proof of a class member from Michigan, along with one from Indiana, and another from Georgia. (Doc. ## 1, 23-1, 165). The Warren Affidavit submitted following Doctors Hospital's Notice of Removal provides that the Michigan member had "a Michigan address and PIP coverage issued by Progressive," and was "treated in the [Doctors Hospital's] Emergency Department in March 2019." (Doc. # 23-1 at ¶ 8). That member's Explanation of Benefits from Progressive Insurance notes that "the insurer adjudicated and paid the class member's claim in accordance with the Florida PIP [s]tatute." (Doc. # 165 at 10). Indeed, it provides: "The allowable amount has been calculated pursuant to Florida Statute [§] 627.736(5) which limits reimbursement to 75% of the hospital's usual and customary charges for emergency services." (Doc. # 156-3 at 5). Thus, Doctors Hospital has met its burden of proving that the

Michigan member had PIP coverage and qualified as a putative class member.

Day also argues that Doctors Hospital has failed to carry its burden of demonstrating that any putative class member was a diverse party *at the time of removal*. (Doc. # 156 at 11-14). For diversity purposes, "[c]itizenship is equivalent to domicile[.]" McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002) (quotations omitted). "[D]omicile requires both residence in a state and an intention to remain there indefinitely." Travaglio v. Am. Express Co., 735 F.3d 1266, 1269 (11th Cir. 2013) (citation omitted).

"Although residence is not equivalent to domicile, a party's place of residence is prima facie evidence of his domicile." Hardenbrook v. Irwin, No. 8:09-cv-2542-T-27TBM, 2010 WL 11629185, at *2 (M.D. Fla. May 26, 2010) (emphasis omitted). Other facts that courts consider in determining an individual's domicile include, among other things, "where driver's and other licenses are obtained, where mail is received, where telephone numbers are maintained and listed, . . . and where memberships in local professional, civil, religious[,] or social organizations are established." Muhammad v. Rice, No. 2:16-cv-01206-SGC, 2018 WL 5084854, at *2 (N.D. Ala. Oct. 18, 2018) (quotations omitted).

9

At the time of treatment, the Michigan member provided a permanent address in Michigan, a driver's license that "reflected an address in Southeast Michigan," and a telephone number that had "a Southeast Michigan area code." (Doc. # 165 at 11-12). Furthermore, Doctors Hospital presented evidence that the member continued to be domiciled in Michigan at the time of removal as the class member attended Church activities there in late July 2019. (Id. at 13; Doc. # 167 at ¶ 14-19).

Day does not dispute any of these facts, which the Court finds sufficient to establish that the Michigan member was a citizen of Michigan at the time of removal. See Audi Performance & Racing, LLC v. Kasberger, 273 F. Supp. 2d 1220, 1228 (M.D. Ala. July 3, 2003) (finding an individual to be domiciled in Alabama because his "driver's license, vehicle registration[,] and license plate . . . were issued by . . . Alabama," he was registered to vote in Alabama, was using an Alabama phone number, and he "had not established membership in any local professional, civic, religious or social organizations" outside of Alabama).

Because the Michigan member both qualifies as a class member and is not a citizen of Florida or Tennessee, CAFA's minimal-diversity requirement is met. See D & J Plastics, Inc. v. Veolia Es Solid Waste Southeast, Inc., No. 4:09-CV-

10

156 (CDL), 2010 WL 1257734, at *1 (M.D. Ga. Mar. 26, 2010) (explaining that minimal diversity exists for purposes of CAFA when "at least one plaintiff and one defendant are from different states"). Thus, the Court need not address the citizenship of the other putative class members.

### 2. Amount in Controversy

Next, Day argues that Doctors Hospital has not met its burden of establishing that CAFA's amount-in-controversy requirement has been met. (Doc. # 156 at 14). As mentioned, CAFA requires that the aggregate amount in controversy exceed $5 million. 28 U.S.C. § 1332(d)(2).

In the Warren Affidavit, Doctors Hospital offered that charges for over 2,000 patients who received services at Doctors Hospital and "had automobile insurance as their primary insurance coverage," between 2015 and 2019 exceeded $26 million. (Doc. # 23-1 at ¶ 3-6). Furthermore, the "payments from automobile insurers for these patients totaled over [$10 million]." (Id. at ¶ 7). Day retorts that these amounts were based on individuals who were not putative class members but provides no proof or explanation thereof. (Doc. # 156 at 14-15). In its response to the Motion, Doctors Hospital further evidences that the amount in controversy exceeded $5 million at the time of removal by providing a

11

supplemental affidavit that. That affidavit establishes that, even if individuals without Florida insurance policies were excluded, the amount in controversy would still exceed $25 million in medical charges and $9 million in payments from automobile insurers. (Doc. # 165 at 16).

Even if the Court did not adopt this method of calculation, assuming that every putative class member has been overcharged by approximately the same amount Day claims he was overcharged, the amount-in-controversy would exceed $5 million. The Warren affidavit notes the existence of over 2,000 class members (Doc. # 23-1 at ¶ 5) and Day claims, among other things, that he was overcharged by at least $1,300 for a single x-ray and was required to pay over $5,000 out of pocket that he would not have had to otherwise. (Doc. # 1-1 at 39-43). Assuming that the other class members were overcharged by even half of those sums, the amount-in-controversy would exceed $5 million. And, it should be noted that Day has not offered alternative means of calculating the amount-in-controversy. (Doc. ## 156, 177).

Therefore, Doctors Hospital has met its burden of proving that the amount in controversy exceeds $5 million. See Main Drug, Inc. v. Aetna U.S. Healthcare, Inc., 455 F. Supp. 2d 1323, 1327-28 (M.D. Ala. Apr. 14, 2006) (finding the

amount in controversy satisfied with proof of payments by the defendant to putative class members). Because Day does not contest CAFA's numerosity requirement (Doc. # 156, 177), and both the diversity and amount-in-controversy requirements have been met, this Court has subject-matter jurisdiction under CAFA. See Waldman v. Cingular Wireless LLC, No. 07-80081-CIV, 2007 WL 1970858, at *4 (S.D. Fla. July 3, 2007) (denying a motion to remand because these criteria were met).

### B. CAFA Exceptions

Finally, Day argues that the Court must remand this case because of the home-state and local-controversy exceptions to CAFA jurisdiction. (Doc. # 156 at 8). Under the home-state exception to CAFA, a district court must "decline to exercise jurisdiction over class actions in which two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." Whelan v. Wesley Apartment Homes, LLC, 376 F. Supp. 3d 1312, 1315 (N.D. Ga. 2019) (quotations omitted). Similarly, under the local-controversy exception, a court must remand a case when: "(1) at least one defendant [is] a citizen of the forum state, (2) the plaintiff class . . . seek[s] 'significant relief' from that defendant," (3) the local defendant's conduct . . .

13

form[s] a 'significant basis' for the claims asserts, and (4) no other class action based on the same or similar factual allegations [has] been filed against any defendant in the past three years." Hill v. Nat'l Ins. Underwriters, Inc., 641 F. App'x 899, 902 (11th Cir. 2016) (quoting 28 U.S.C. § 1332(d)(4)(A)(i)-(ii)).

Day bears the burden of proving that one of these exceptions applies. See Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006) ("[P]laintiffs bear the burden of establishing that they fall within CAFA's local controversy exception."). Importantly, both of these exceptions are subject to a thirty-day time limit. See Hill, 641 F. App'x at 903 ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." (quoting 28 U.S.C. § 1447(c))); Marrache v. Bacardi U.S.A., Inc., No. 19-23856-Civ-Scola, 2019 WL 9656447, at *2 (S.D. Fla. Dec. 6, 2019) ("Marrache's motion, which alleges that three of CAFA's exceptions require remand, is not based on an alleged lack of subject matter jurisdiction, and thus the 30-day limitation applies.").

Day cannot avoid this timeliness requirement by characterizing his entire Motion as one on the basis of lack

14

of subject-matter jurisdiction. Indeed, the CAFA exceptions do not divest federal courts of subject-matter jurisdiction. See Hunter v. City of Montgomery, Ala. 859 F.3d 1329, 1334 (11th Cir. 2017) ("[T]he CAFA exceptions . . . do not go to the existence of subject matter jurisdiction; instead they go to whether jurisdiction may be exercised in a particular circumstance.").

Here, the notice of removal was filed fifteen months ago. (Doc. # 1). Thus, Day's Motion is time-barred to the extent that it seeks remand based on CAFA's exceptions. See Whitfield v. Miami-Dade Cty. Police Dep't, 535 F. App'x 772, 774 (11th Cir. 2013) (reversing the district court's order remanding the case to state court as the motion to remand was filed three months late).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiff David Day's Motion to Remand (Doc. # 156) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 28th day of September, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE