UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID DAY,

    Plaintiff,

v.                      Case No. 8:19-cv-1522-T-33TGW

SARASOTA DOCTORS HOSPITAL,
INC. d/b/a DOCTORS HOSPITAL
OF SARASOTA,

    Defendant.
_____/

## ORDER

    This matter is before the Court upon consideration of Defendant Sarasota Doctors Hospital, Inc.'s Motion to Exclude Expert Opinion and Testimony of Kevin McCarty (Doc. # 185), filed on November 13, 2020. Plaintiff David Day responded on November 25, 2020. (Doc. # 192). Doctors Hospital replied on December 9, 2020. (Doc. # 195). For the reasons set forth below, the Motion is granted in part and denied in part.

## I.   Background

    This is a breach of contract and Florida Deceptive Unfair Practices Act ("FDUTPA") action that arose out of Day's treatment at Doctors Hospital. (Doc. # 46). Day initiated this suit in state court on November 30, 2017. (Doc. # 1).

Following removal to this Court, and two amended complaints, the case proceeded through discovery. (Id.).

In the second amended complaint, Day alleges that Doctors Hospital charged unreasonably high fees for his medical treatment because his only form of insurance was personal injury protection insurance ("PIP insurance"). (Doc. # 46 at ¶ 5). According to Day,

> [PIP insurance] coverage is required of all drivers in Florida [under the Florida No-Fault law]. By statute, hospitals treating patients covered by PIP may charge the insurer and the injured party only a "reasonable amount" for services and supplies rendered. [Fla. Stat. § 627.736(5)(a)]. The charge for such services and supplies "may not exceed the amount the person or institution customarily charges for like services or supplies," and the "reasonable amount" for such services and supplies is directly related to the "usual and customary charges and payments accepted by the provider" for such services and supplies, as well as "reimbursement levels in the community" and "federal and state medical fee schedules." Id.

(Doc. # 46 at ¶ 6). Day contends that Doctors Hospital violated the Florida No-Fault law in charging PIP-insured patients – including himself – these allegedly unreasonable rates. (Id. at ¶ 8).

Day intends to rely on Kevin McCarty's expert opinion and testimony at trial. (Doc. # 193). McCarty has worked in the insurance regulatory industry since 1988 and, most notably, served as the Florida Insurance Commissioner from

2

2003 to 2016. (<u>Id.</u> at ¶ 1-7). McCarty was tasked with "provid[ing] an opinion on the billing practices of Doctors Hospital . . . under various laws and regulations, including the [PIP] statute." (<u>Id.</u> at ¶ 9). McCarty's report discusses, in part, the insurance regulatory industry's understanding of "usual and customary" medical charges under the PIP statute. (<u>Id.</u> at ¶ 13). McCarty concludes that "Doctors Hospital . . . is charging PIP patients and insurers excessive fees for the services provided; they are being charged at unreasonably high rates far above what Medicare and private patients are paying for identical services." (<u>Id.</u> at ¶ 9-10).

In the Motion, Doctors Hospital seeks to exclude McCarty's expert opinion and testimony. (Doc. # 185). Day has responded (Doc. # 192), and Doctors Hospital has replied. (Doc. # 195). The Motion is now ripe for review.

## II.  <u>Discussion</u>

Federal Rule of Evidence 702, which governs the admission of expert testimony in federal courts, states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and

> methods; and (d) the expert has reliably applied
> the principles and methods to the facts of the case.

Fed. R. Civ. P. 702. In <u>Daubert v. Merrell Dow
Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), the Supreme Court
held that federal district courts must ensure that any and
all scientific testimony or evidence admitted is both
relevant and reliable. <u>Id.</u> at 589-90. This analysis applies
to non-scientific expert testimony as well. <u>Kumho Tire Co. v.
Carmichael</u>, 526 U.S. 137, 147-49 (1999). District courts are
tasked with this gatekeeping function so "that speculative,
unreliable expert testimony does not reach the jury under the
mantle of reliability that accompanies the appellation expert
testimony." <u>Rink v. Cheminova, Inc.</u>, 400 F.3d 1286, 1291 (11th
Cir. 2005) (citation omitted).

In the Eleventh Circuit, trial courts must engage in a
"rigorous three-part inquiry" in determining the
admissibility of expert testimony. <u>Hendrix v. Evenflo Co.</u>,
609 F.3d 1183, 1194 (11th Cir. 2010). Specifically, courts
must assess whether:

> (1) the expert is qualified to testify competently
> regarding the matters he intends to address; (2)
> the methodology by which the expert reaches his
> conclusions is sufficiently reliable as determined
> by the sort of inquiry mandated in <u>Daubert</u>; and (3)
> the testimony assists the trier of fact, through
> the application of scientific, technical, or

> specialized expertise, to understand the evidence
> or to determine a fact in issue.

<u>Id.</u> (citation omitted). "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." <u>Adams v. Magical Cruise Co.</u>, No. 6:15-cv-282-Orl-37TBS, 2016 WL 11577631, at *2 (M.D. Fla. Oct. 21, 2016) (citing <u>Rink</u>, 400 F.3d at 1292). The Court will address each aspect of the three-part inquiry below.

### A.   McCarty's Qualifications

First, the Court must assess whether McCarty is qualified to testify about the matters he intends to address. <u>City of Tuscaloosa v. Harcros Chems., Inc.</u>, 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Civ. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" <u>Clena Invs., Inc. v. XL Specialty Ins. Co.</u>, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting <u>Jack v. Glaxo Wellcome Inc.</u>, 239 F. Supp. 2d 1308, 1314 (N.D. Ga. 2002)). "This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the

level of the expert's expertise go to credibility and weight, not admissibility." Id. (citations omitted).

Here, Doctors Hospital does not dispute McCarty's qualifications. (Doc. # 195 at 1). Indeed, McCarty has extensive experience in the insurance regulatory industry – stemming over twenty-seven years. (Doc. # 193 at ¶ 2). For thirteen of those years, from 2003 to 2016, McCarty served as Florida's Commissioner of Insurance Regulation, overseeing the regulation of PIP insurance in Florida, among other things. (Id.). In that role, McCarty's "responsibilities included the review of healthcare rates charged by insurers for compliance with Florida [l]aws and [r]egulations." (Id. at ¶ 6). As Commissioner, McCarty also was involved in "public policy discussion regarding PIP reform, cost drivers, and cost containment strategies." (Id. at ¶ 5).

Additionally, McCarty previously served as chair of Florida's Workers' Compensation Three-Member Panel, which establishes fee schedules for hospitals. (Id.). And, McCarty was active in the National Association of Insurance Commissioners, serving as president in 2012. (Id. at ¶ 2). Since leaving the Florida Office of Insurance Regulation in 2016, McCarty founded Celtic Global Consulting, LLC, which

"provid[es] comprehensive services focused on insurance issues and trends." (Id. at ¶ 7).

Given Daubert's lenient standard, and Doctors Hospital's lack of opposition, the Court finds that McCarty's experience in this industry makes him "minimally qualified" to testify about medical fees charged by hospitals to patients whose only form of insurance is PIP insurance. See U.S. Sec. & Exch. Comm'n v. Spartan Sec. Grp., No. 8:19-cv-448-T-33CPT, 2020 WL 7024885, at *3 (M.D. Fla. Nov. 30, 2020) (finding an expert with thirty years of experience in his industry minimally qualified to testify about the "generally accepted standards, practices, and procedures of [his] industry").

### B.   Reliability of McCarty's Methodology

Next, the Court must determine whether McCarty's methodology is reliable. City of Tuscaloosa, 158 F.3d at 562. Doctors Hospital argues that McCarty's opinions are unreliable because "McCarty applies no expert methodology," and rather bases his interpretation of the PIP statute's language solely on his personal experience, and accordingly "is nothing more than a fact witness." (Doc. # 185 at 6-7). Day counters that "[c]ourts in this district routinely accept expert testimony about insurance industry standards." (Doc. # 192 at 4).

"Exactly how reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citation omitted) (emphasis omitted). There are four recognized, yet non-exhaustive factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016) (citation omitted). A district court may take other relevant factors into consideration as well. Id.

"Although an opinion from a non-scientific expert should receive the same level of scrutiny as an opinion from an expert who is a scientist, some types of expert testimony will not naturally rely on anything akin to the scientific method, and thus should be evaluated by other principles pertinent to the particular area of expertise." Washington v. City of Waldo, No. 1:15-CV-73-MW/GRJ, 2016 WL 3545909, at *3 (N.D. Fla. Mar. 1, 2016) (citation omitted). "[I]f the

[expert] witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." <u>Frazier</u>, 387 F.3d at 1261 (citation omitted) (emphasis omitted). Therefore, "[a]n expert's unexplained assurance that his opinions rest on accepted principles is not enough." <u>Clena</u>, 280 F.R.D. at 663 (citation omitted). Additionally, the Court's analysis must "focus solely on principles and methodology, not on the conclusion that they generate." <u>Seamon</u>, 813 F.3d at 988 (citation omitted).

Here, Doctors Hospital challenges McCarty's expert testimony and report, in which he avers that "Doctors Hospital . . . is charging PIP patients and insurers excessive fees for services provided," and concludes that this conduct is "inconsistent" with both the insurance regulatory industry's understanding of what constitutes a "usual and customary" charge, and the PIP statute. (Doc. # 185 at 2; Doc. # 193 at ¶¶ 10-11, 32). McCarty comes to this conclusion by stating that a hospital's chargemaster – which Doctors Hospital allegedly used to bill Day's insurer – is not equivalent to the term "usual or customary," as understood in the insurance

regulation industry, because no hospitals actually charge the rates in the chargemaster. (Doc # 193 at ¶¶ 25, 30; Doc. # 193-1 at 169:9-12). In his report, McCarty explains that he drew upon his qualifications, as well as certain documents, in making his conclusions. (Doc. # 193 at ¶ 9). These materials include the PIP statute's legislative history, a report on hospital billing under the Affordable Care Act, and certain court documents. (Id. at 11). In his deposition, McCarty also stated that he "looked at some changes of Medicare reimbursement and [he] looked at Medicaid, the definition of usual and customary." (Doc. # 193-1 at 194:4-8).

The Court finds McCarty's methodology sufficiently reliable. McCarty employed his significant experience in the relevant industry – notably as Florida's chief insurance regulator for thirteen years – in concluding that a hospital's chargemaster is not equivalent to a "usual and customary" charge and that Doctors Hospital's rates are excessive. (Doc. # 193 at ¶ 25, 30). Indeed, McCarty notes that he discussed this phrase with stakeholders and individuals within and outside the Office of Insurance Regulation on a number of occasions. (Id. at ¶ 23). McCarty further explains that his

experience is a sufficient and reliable basis for his opinion as follows:

> Based on my experience in the Division of Workers' Compensation, my years as Insurance Commissioner, the deliberations of the Three-Member Panel, and my involvement in legislative meetings regarding the changes proposed to the PIP law, I can state that the term *usual and customary* was used in all of these discussions. The term *usual and customary* in all of these contexts was used to describe a reimbursement for services that is usually paid and accepted by providers and was never used to simply mean the amount listed in the chargemaster at the hospital.

(Id.) (emphasis in original). This methodology is sufficiently reliable for Daubert purposes. See Trinidad v. Moore, No. 2:15-cv-323-WHA, 2017 WL 490350, at *2 (M.D. Ala. Feb. 6, 2017) ("Dillard's opinions in his supplemental report, like his opinions in his earlier report, are sufficiently reliable because they are based upon his personal knowledge and experience."); see also Hoff v. Steiner Transocean, Ltd., No. 12-22329-CIV, 2014 WL 273075, at *4 (S.D. Fla. Jan. 24, 2014) ("As long as a reliable basis exists for the expert's opinion, it is admissible, and it is then up to the parties to vet the opinion before the jury.").

### C.   **Assistance to the Trier of Fact**

Finally, McCarty's testimony must assist the trier of fact. Fed. R. Evid. 702(a). "By this requirement, expert

testimony is admissible if it concerns matters that are beyond the understanding of the average [layperson]." <u>Frazier</u>, 387 F.3d at 1262. "[T]he court must 'ensure that the proposed expert testimony is relevant to the task at hand, . . . i.e., that it logically advances a material aspect of the proposing party's case.'" <u>Allison v. McGhan Med. Corp.</u>, 184 F.3d 1300, 1312 (11th Cir. 1999) (citation omitted) (alteration in original). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." <u>Frazier</u>, 387 F.3d at 1262-63 (citation omitted).

Doctors Hospital argues that McCarty's opinion and testimony should be excluded because it would not assist the trier of fact. (Doc. # 185 at 2). Specifically, Doctors Hospital contends that McCarty's opinions "do not bear on the actual issue in dispute – i.e., whether [Day] was charged unreasonably high amounts for his medical services" because McCarty "makes no attempt to apply his opinions to the facts in dispute." (<u>Id.</u> at 2, 5) (emphasis omitted). Additionally, Doctors Hospital argues that "McCarty's opinions are focused on interpreting the meaning of the statutory phrase 'usual and customary charges' and opining that [Doctors] Hospital's conduct is inconsistent with the Florida PIP law," and thus

12

constitute impermissible legal conclusions. (Id. at 10-12).
Day responds that McCarty's testimony "will [help] the trier
of fact understand the statutes, regulations, and industry
standards relating to a hospital's changes in general but
also relating to the charges permitted when a hospital bills
for reimbursement of PIP-covered services under a Florida No-
Fault [insurance policy]." (Doc. # 192 at 9).

To the extent that McCarty intends to opine on the
insurance regulatory industry's standards and its
understanding of the phrase "usual and customary" as it
relates to the PIP statute, McCarty's opinion is relevant and
not a legal conclusion. See Sec. & Exch. Comm'n v.
BankAtlantic Bancorp, Inc., No. 12-60082-CIV-SCOLA/OTAZO-
REYES, 2013 WL 12009694, at 10-11 (S.D. Fla. Nov. 14, 2013)
("[E]xpert testimony on regulatory requirements and industry
practices is permissible and does not, without more,
constitute improper legal conclusions."). This testimony
would be helpful to the trier of fact in assessing whether
Doctors Hospital indeed overcharged PIP-covered patients,
including Day. See Pacinelli v. Carnival Corp., No. 18-22731-
Civ-WILLIAMS/TORRES, 2019 WL 3252133, at *6 (S.D. Fla. July
19, 2019) (finding expert testimony on certain industry
standards helpful as they were "beyond the common knowledge

of the average [layperson]"). Medical billing standards – or
what the insurance regulatory industry understands to be
standard practices – are not common knowledge.

However, to the extent that McCarty hopes to testify
that Doctors Hospital violated the PIP statute, this
constitutes an impermissible legal conclusion. See R&R Int'l,
Inc. v. Manzen, LLC, No. 09-60545-CIV, 2010 WL 3605234, at
*19 (S.D. Fla. Sept. 12, 2010) ("While an expert may be able
to offer an opinion as to whether one party or another acted
in compliance with industry standards, an expert cannot
permissibly opine on whether a party had a right to do what
it did under *legal* standards. Instead, this area is reserved
for the Court." (emphasis in original)).

In his report, McCarty states: "Doctors Hospital . . .
knew or should have known that using the chargemaster for
billing PIP patients was excessive and beyond what the
hospital receives from other patients for the same medical
services. Charging PIP-covered patients using the hospital
chargemaster *is inconsistent with the Florida PIP law*[.]"
(Doc. # 193 at ¶ 32) (emphasis added). In another section of
the report, McCarty states, perhaps less obviously: "In my
opinion, Doctors Hospital . . . is charging PIP patients and
insurers excessive fees for the services provided: they are

14

being charged at unreasonably high rates far above what Medicare and private patients are paying for identical services." (Id. at ¶ 10). Such expert testimony stating that Doctors Hospital's conduct violated the PIP statute is inappropriate. See Umana-Fowler v. NCL (Bah.) Ltd., 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) ("[M]erely telling the jury what result to reach is unhelpful and inappropriate." (citing Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990))).

Therefore, the Motion is granted to the extent that McCarty intends to opine on Doctors Hospital's legal obligations under the PIP statute, whether Doctors Hospital fulfilled those obligations, or whether Doctors Hospital violated the PIP statute. See Montgomery, 898 F.2d at 1541 ("A witness . . . may not testify to the legal implications of [the defendant's] conduct[.]"); see also Salvani v. Corizon Health, Inc., No. 17-24567-Civ-SCOLA/TORRES, 2019 WL 4101794, at *3-4 (S.D. Fla. Aug. 29, 2019) (excluding an expert's testimony that "merely [told] the jury what result to reach" (citation omitted)). The Court notes that if McCarty appears to cross this line at trial, Doctors Hospital may raise an objection at that time. See R.W. v. Bd. of Regents of the Univ. Sys. of Ga., 114 F. Supp. 3d 1260, 1275 (N.D.

Ga. 2015) ("If in fact Dr. Agharkar attempts to provide testimony at trial that impermissibly interprets or applies the [law], such evidence can be excluded pursuant to proper evidentiary objections.").

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Sarasota Doctors Hospital, Inc.'s Motion to Exclude Expert Opinion and Testimony of Kevin McCarty (Doc. # 185) is **GRANTED** in part and **DENIED** in part.

(2)   McCarty's opinion and testimony are excluded to the extent that he opines on Doctors Hospital's legal obligations under the PIP statute, whether Doctors Hospital fulfilled those obligations, or whether Doctors Hospital's conduct violated the PIP statute.

(3)   McCarty may testify as to the insurance regulatory industry's medical billing standards, as well as the industry's understanding of what constitutes a "usual and customary" charge.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 11th day of December, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE